## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**GILSCOT-GUIDROZ INTERNATIONAL CO., INC.**       **CIVIL ACTION**

**VERSUS**                                        **NO. 24-1409**

**CAROLINE MILEK, ET AL.**                        **SECTION: D (1)**

### ORDER AND REASONS

Before the Court is a Motion for Temporary Restraining Order, filed by Gilscot-Guidroz International Co., Inc. (hereafter, "GGII").[1]  The defendants, Caroline Milek, MilekCo International Co., Inc., and Mark Cameron Plato, have not yet made an appearance in this matter.  Accordingly, consideration of the instant Motion is *ex parte*.  The Court held two telephone status conferences on June 1, 2024[2] and June 2, 2024[3] to discuss the Motion with counsel for the plaintiff.

After careful consideration of GGII's Verified Complaint for Injunctive Relief and Damages[4] and exhibits thereto,[5] the Motion, GGII's Supplemental Memorandum in Support of its Motion,[6] the Supplemental Certification of Counsel in Support of Temporary Restraining Order,[7] the information provided by counsel during the two telephone status conferences, and the applicable law, the Motion is **GRANTED** and a temporary restraining order ("TRO") will be issued.

---

[1] R. Doc. 3.
[2] R. Doc. 9.
[3] R. Doc. 11.
[4] R. Doc. 1.
[5] R. Docs. 7 & 8.
[6] R. Doc. 13.
[7] R. Doc. 14.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[8]

Plaintiff, GGII, is a Louisiana corporation that is in the business of providing shipping and import logistics to a diverse set of clients across industries and regularly transacts business in states other than Louisiana.[9]   Over the years, GGII has developed and maintained trade secrets and other confidential information, including proprietary information, knowledge, and data, including without limitation business policies, pricing, marketing, distribution, finances, and sales information and business plans, customer lists, and lists of suppliers.[10]   GGII has developed relationships with a number of clients over decades through substantial investments of time and resources, and does not share its confidential information outside of GGII.[11]  GGII takes measures to preserve the secrecy of its confidential information, which can only be accessed by and through a company email and password assigned to each employee or through a company computer with multi-factor authentication.[12] GGII claims that its confidential information is highly valuable, not generally known outside of GGII, and would be of significant value to GGII's competitors.[13]   GGII asserts that it derives a competitive advantage and independent economic value, both actual and potential, from the confidential information because it is not generally

---

[8] For purposes of this Order and Reasons, the Court accepts the allegations in the Verified Complaint as true.
[9] R. Doc. 1 at ¶¶ 1-2 & 50.
[10] *Id*. at ¶ 24.
[11] *Id*. at ¶¶ 25-26.
[12] *Id*. at ¶ 27.
[13] *Id*. at ¶ 28.

known to the public or to others who can obtain economic value from its disclosure or use.[14]

Prior to the events giving rise to this litigation, defendant, Caroline Milek ("Milek") was employed by GGII as its Vice President of Imports for approximately three-and-a-half years.[15]  GGII alleges that on February 27, 2024, Milek created and registered a new company with the Louisiana Secretary of State, MilekCo International Co., Inc. ("MilekCo"), to compete directly with GGII as a freight import manager.[16]  According to GGII, over the next two months, prior to her resignation from GGII on May 1, 2024, Milek acted in concert with defendant, Mark Cameron Plato ("Plato"), to wrongfully obtain confidential information and trade secrets from GGII using her GGII-issued email and officer credentials to access and forward the information to her personal email and to Plato directly.[17]  Specifically, on May 6, 2024, Milek emailed Plato a link to GGII's password-protected spreadsheet of passwords used in the course of GGII's daily business operations,[18] and in a series of emails from April 2, 2024 to May 7, 2024, Milek communicated with a truck broker to coordinate shipments for one of GGII's clients, GM, which she acquired from GGII's confidential information, and Plato is copied on and referenced in the emails.[19]  Additionally, from May 9, 2024 through May 13, 2024, Milek sent emails from her GGII email address

---

[14] *Id*.
[15] *Id*. at ¶ 3; R. Doc. 13 at p. 1.
[16] R. Doc. 1 at ¶¶ 5 & 39; Telephone Status Conference held on June 2, 2024.  *See*, R. Doc. 7-1 at p. 1. The Court notes that the original name of the entity was Milekco International Inc., and that it was changed to Milekco International Co., Inc. on May 7, 2024.  R. Doc. 7-1 at p. 1.
[17] R. Doc. 1 at ¶ 40.
[18] R. Doc. 1 at ¶ 41(a); R. Doc. 7-2; R. Doc. 13-1 at ¶ 8 (*citing* R. Doc. 7-2).
[19] R. Doc. 1 at ¶ 41(b); R. Doc. 7-3; R. Doc. 13-1 at ¶ 9 (*citing* R. Doc. 7-3).

to her personal email addresses attaching GGII's client address book, sales tracking spreadsheets, sales invoices, and several documents pertaining to acquiring her own national broker's license.[20]  Finally, on May 9, 2024, Milek emailed GGII's customers to inform them that she no longer worked with GGII, provided her personal contact information, and then forwarded that email to Plato.[21]

Milek submitted her resignation to GGII on May 1, 2024,[22] and her last day of employment at the company was May 15, 2024.[23]  At the request of GGII, Milek turned in her GGII-issued laptop on May 3, 2024, but she continued working for GGII until May 15, 2024.[24]  The week after Milek's departure, GGII began training a new individual to fill Milek's position and discovered that Milek's company-issued laptop had been reset to factory settings, thus wiping clean all information, data, and software previously on the laptop.[25]  GGII immediately hired a third-party forensic technology vendor to investigate the data stored on the internal server accessible through Milek's company email address and password, and to attempt to recover the deleted files and information.[26]  GGII alleges that on May 6, 2024, following her notice to leave GGII but before actually ending her employment, Milek used her GGII email to send GGII's import management spreadsheet to Plato, who is neither a GGII

---

[20] R. Doc. 1 at ¶ 41(c); R. Doc. 7-4; R. Doc. 13-1 at ¶ 5 (*citing* R. Doc. 7-4).
[21] R. Doc. 1 at ¶ 41(d); R. Doc. 7-5.
[22] R. Doc. 1 at ¶¶ 8 & 29.
[23] Telephone Status Conference held on June 1, 2024.
[24] R. Doc. 1 at ¶¶ 30-31; Telephone Status Conference held on June 1, 2024.
[25] R. Doc. 1 at ¶¶ 8 & 32-33; Telephone Status Conference held on June 1, 2024.
[26] R. Doc. 1 at ¶¶ 9 & 34.

employee nor a GGII customer.[27]  Milek also copied her personal email on that email chain.[28]

Upon further analysis of Milek's company-issued laptop, GGII learned that, in a series of emails between April 2, 2024 and May 7, 2024, Milek communicated with a trucking company to coordinate shipments for a GGII client (BM) that she acquired through GGII's confidential information.[29]  Milek copied Plato on those emails and appear to reference Plato as "someone she is working with."[30]  In the emails to the trucking company, Milek makes clear that she will be checking with Plato for good meeting times for their continued discussions.[31]  Additionally, an email from the trucking company representative sent on April 30 is directed to "Caroline and Cameron," and the sender writes that he "enjoyed getting to talk to you both" and is "excited to build a relationship with your company Caroline!"[32]  GGII further learned that Milek had been forwarding confidential company information and trade secrets to her personal email address, including customer lists and contact information, client invoices, and communications with customers, to acquire their business through her new company.[33]

On May 24, 2024, GGII issued a cease-and-desist letter to Milek, sent via email and by registered mail, commanding Milek to: (1) return all of GGII's trade secrets

---

[27] *Id*. at ¶ 41; R. Doc. 7-2.
[28] R. Doc. 7-2.
[29] R. Doc. 1 at ¶ 41; R. Doc. 7-3; R. Doc. 13 at p. 2 (*citing* R. Doc. 13-1 at ¶¶ 9-10 (*citing* R. Docs. 7-3 & 7-5)).
[30] R. Doc. 7-3; *Id*. at pp. 4-6.
[31] *Id*. at p. 6.
[32] *Id*. at pp. 1-2.
[33] R. Doc. 1 at ¶¶ 9, 35, 41; R. Doc. 13 at pp. 1-4 (*citing* R. Docs. 7-1 through 7-5).

and confidential information; (2) not use GGII's customer list in the future; and (3) cooperate with GGII to mitigate any harm caused by her conduct to date.[34]  The letter also commanded Milek to preserve all electronically stored information relating her efforts to use GGII's trade secrets and confidential information to compete with GGII and relating to her efforts to develop a competing business while employed at GGII.[35] The letter requested that Milek confirm receipt thereof and notify GGII within one week, or by May 31, 2024, if she agrees to return all of GGII's trade secrets and confidential information, to not use GGII's customer list in the future, and to cooperate with GGII to mitigate any harm caused by her conduct.[36]

During the June 1, 2024 telephone status conference, counsel for GGII advised the Court that they have not received a response from Milek regarding the cease-and-desist letter.  As a result, GGII filed a Verified Complaint for Injunctive Relief and Damages on May 31, 2024, asserting the following causes of action against Milek, Plato, and/or MilekCo:

- Count I: Violation of the Defend Trade Secrets Act ("DTSA") (all defendants), 18 U.S.C. § 1831, *et seq*.;
- Count II: Violation of the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. R.S. 51:1431, *et seq*. (all defendants);
- Count III: Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Milek);
- Count IV: Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPSA"), La. R.S. 51:1401, *et seq*. (all defendants);
- Count V: Unjust Enrichment (all defendants);
- Count VI: Conversion (Milek and Plato);
- Count VII: Breach of Fiduciary Duties of Loyalty and Due Care (Milek);
- Count VIII: Injunctive Relief (all defendants);

---

[34] R. Doc. 1 at ¶ 45; R. Doc. 8-1.
[35] R. Doc. 1 at ¶ 45; R. Doc. 8-1 at p. 3.
[36] R. Doc. 8-1 at p. 3.

- Count IX: Conspiracy (all defendants); and
- Count X: Fraud (Milek).[37]

Contemporaneously with the filing of its Verified Complaint, GGII filed the instant Motion for Temporary Restraining Order, seeking a temporary restraining order ("TRO"), ordering that Defendants and all those in active concert with them (collectively, the "Covered Persons"):

1. are restrained and enjoined from, directly or indirectly, disclosing or making any use of any trade secrets, confidential information, knowledge, data or other information of GGII, including without limitation, business policies, pricing, marketing, distribution, finances, and sales information and business plans, software and marketing tools, customer lists, lists of suppliers, management and administrative systems, and intellectual property rights (collectively, "Confidential Information");

2. must return to GGII, within 48 hours, any of the Confidential Information in their possession, custody, or control, including without limitation any electronically stored information or hard copy material;

3. must return to GGII, within 48 hours, any property of GGII that is in their possession, custody, or control, without deleting, over-writing, destroying, discarding, or otherwise altering any records, data, documents, evidence, communications (i.e., email, voicemail, text, or instant messages), or other information electronically stored on the computer;

4. must produce a list of all existing or former clients or customers of GGII that were contacted or solicited;

5. must produce a list of any and all computers, computer hard drives, PDA's, tablets, I-Pads, thumb drives, smart phones, or like devices capable of storing electronic data in their possession or controlled by them;

6. must preserve all evidence that may be relevant to GGII's claims and not delete, over-write, destroy, discard, or otherwise alter any records, data, property, documents, evidence, communications (i.e., email, voicemail, text, or instant messages), or other information, including without limitation any electronically stored information or hard copy material, that may be subject to discovery; and

---

[37] R. Doc. 1 at ¶¶ 48-116.

7. must, after the preservation of evidence by the copying/mirroring of electronic information on the personal computing devices (including any desktop computers, laptop computers, tablets, or smart phones) of Covered Persons, return to GGII any Confidential Information that is in their possession, custody, or control, and to the extent that any such information is maintained in electronic form must, after such information is copied and returned to GGII, purge or destroy any electronic record of such information, in a manner that does not allow the Confidential Information to be retrieved or restored, and certify to GGII, under oath, that the Confidential Information has been thus purged or destroyed.[38]

On June 1, 2024, the Court held a telephone status conference to discuss the Motion.[39]  In the morning before the conference, GGII filed five exhibits to its Verified Complaint, along with an index of the exhibits.[40]  During that conference, counsel for GGII clarified that Milek's last day at GGII was May 15, 2024, that she returned her GGII-issued laptop on May 3, 2024, and that GGII's forensic investigation by Restech of its internal server is ongoing.  The Court also discussed with counsel the exhibits to the Verified Complaint.  Counsel for GGII subsequently updated its previous representation in its Certification of Counsel,[41] and advised the Court that counsel had, in fact, attempted to notify the Defendants of the matter and detailed the steps that have been taken to notify Defendants of the Verified Complaint, the Motion, and the June 1, 2024 conference.[42]  Following the conference, at the request of the Court, GGII filed three additional exhibits to the Verified Complaint, including the cease and desist letter sent by GGII to Milek on May 24, 2024.[43]

---

[38] R. Doc. 3 at pp. 1-2.
[39] R. Doc. 9.
[40] R. Doc. 7.
[41] R. Doc. 3-2.
[42] Telephone Status Conference held on June 1, 2024.  *See,* R. Doc. 14.
[43] R. Doc. 8.

The Court held a second telephone status conference on June 2, 2024 to further discuss the Motion.[44]  At the Court's request, Keith Guidroz, Jr. participated in the conference and answered some follow-up questions regarding the facts underlying the request for a temporary restraining order, as well as several attachments in the exhibits filed into the record by GGII.[45]

## II.    LEGAL STANDARD

This Court has recognized that temporary restraining orders constitute extraordinary relief and are rarely issued.[46]  "A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief, requiring that movant establish the same four elements for obtaining a preliminary injunction . . . ."[47]  To obtain a temporary restraining order or a preliminary injunction, the movant must show: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not impair the public interest.[48]  If a party fails to meet any of the four requirements, the district court must deny the application for a temporary restraining order.[49]

---

[44] R. Doc. 11.
[45] *See*, R. Docs. 7-2 & 7-4).
[46] *Treen v. Brown*, Civ. A. No. 10-3359, 2010 WL 4027714, at *1 (E.D. La. Oct. 13, 2010) (Vance, J.) (quoting *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999)).
[47] *MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919, at *3 (M.D. La. April 26, 2022) (Jackson, J.) (citing *Garza v. Starr Cty.*, 309 F. Supp. 3d 454, 456 (S.D. Tex. 2018)).
[48] *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 572-73 (5th Cir.1974)).
[49] *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss*, 577 F.3d 250, 253 (5th Cir. 2009).

Further, a party requesting the issuance of an *ex parte* temporary restraining order must provide "specific facts . . . [which] clearly show that *immediate and irreparable* injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."[50]  The movant's attorney must certify "in writing any efforts made to give notice and the reasons why it should not be required."[51] Additionally, the party requesting the temporary restraining order must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[52]

## III.    ANALYSIS

### A. GGII has satisfied the procedural requirements for obtaining a TRO.

Federal Rule of Civil Procedure 65(b) sets forth the requirements which must be met before the Court may issue an *ex parte* TRO, and provides, in pertinent part, the following:

> ***(1) Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> > (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can he heard in opposition; and
> > (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The Court finds that GGII has satisfied the procedural requirements of FRCP 65(b).

GGII filed a Verified Complaint which, as set forth in detail below, clearly shows that

---

[50] Fed. R. Civ. P. 65(b)(1)(A) (emphasis added).
[51] Fed. R. Civ. P. 65(b)(1)(B).
[52] Fed. R. Civ. P. 65(c).

immediate and irreparable injury, loss, or damage will result to GGII before the Defendants can be heard in opposition. GGII's counsel have also established that they have undertaken reasonable efforts to provide copies of the Verified Complaint and the Motion for Temporary Restraining Order to Milek, Plato, and MilekCo.[53]

In the certification filed with the Verified Complaint, counsel for GGII assert that, "GGII seeks a TRO without notice because of Ms. Milek's pattern of covering up and deleting evidence of her theft and dissemination of GGII's Confidential Information and trade secrets, as detailed in the Verified Complaint (Rec. Doc. 1)."[54] The Court notes that prior to the filing the Verified Complaint, GGII's counsel sent a cease and desist letter dated May 24, 2024 to Milek by email to two separate email addresses, carolinemilek@gmail.com and caroline@milekcointl.com, as well as by registered mail.[55] That letter gave Milek one week, or until May 31, 2024, to respond.[56] Hours after the cease and desist letter was sent, GGII received notice that one of Milek's other email accounts, cmilekgg@gmail.com, had been deleted.[57] GGII did not receive a response to the letter, nor did the emails to Milek "bounce back" as undeliverable.[58] As a result, GGII proceeded with the filing of this lawsuit and the Motion for a Temporary Restraining Order.[59]

As noted above, GGII's counsel also filed a Supplemental Certification, detailing the efforts taken by counsel to advise Defendants of the Verified Complaint

---

[53] R. Docs. 3-2 & 14.
[54] R. Doc. 3-2 at p. 2.
[55] R. Doc. 3-2 at pp. 1-2; R. Doc. 8-1.
[56] R. Doc. 8-1.
[57] R. Doc. 8-2. *See*, R. Doc. 1 at ¶¶ 10 & 46 (*citing* R. Doc. 8-2).
[58] R. Doc. 3-2 at p. 2.
[59] *See*, R. Docs. 1 & 3.

and exhibits thereto, the Motion, and the Court's two telephone status conferences.[60] Specifically, GGII's counsel sent a copy of every filing to Milek via two separate email addresses, carolinemilek@gmail.com and caroline@milekcointl.com, and sent them to Plato at his email address, cameronplato@gmail.com.[61] Counsel for GGII further asserts that he has not received any response to the various communications, nor did counsel receive any "bounce back" messages indicating that the emails were not received by Milek or Plato or were otherwise undeliverable.[62] The Court is satisfied that GGII's counsel have undertaken reasonable efforts to provide Defendants notice of the Motion for Temporary Restraining Order and the Court's telephone conferences. The Court is further satisfied that GGII's proposed security of $1,000.00[63] is sufficient to protect Defendants' interests during the pendency of the TRO, in the event the Court ultimately determines that the TRO was improperly issued.[64] Accordingly, the Court finds that GGII has fully satisfied the procedural requirements of Fed. R. Civ. P. 65(b)(1).

Because GGII has satisfied the procedural requirements for obtaining a TRO, the Court now turns to whether GGII has satisfied the substantive requirements for obtaining a TRO.

---

[60] R. Doc. 14.

[61] R. Doc. 14. Notably, these are the same email addresses that Defendants used to communicate with a third-party trucking company regarding one of GGII's customers. *See* R. Doc. 7-3.

[62] R. Doc. 14 at p. 4.

[63] R. Doc. 3-1 at pp. 6-7; R. Doc. 13 at p. 6.

[64] *See,* Fed. Rule Civ. Proc. 65(c); *MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919, at *3 (M.D. La. April 26, 2022) (finding that plaintiff's proposed security of $1,000.00 was sufficient to protect the defendants' interests during the pendency of the temporary restraining order concerning trade secrets and confidential business information).

**B. GGII has satisfied the substantive requirements for obtaining a TRO.**

### 1. *Likelihood of Success on the Merits*

To establish a likelihood of success on the merits, a plaintiff does not need to prove his case.[65]  As explained by one of our sister courts, "Even some likelihood of success can be enough to support the issuance of a preliminary injunction."[66]  GII asserts that it is likely to prevail on the merits of all of its claims asserted in the Verified Complaint, but focuses on its claims against Defendants for violating the Defendant Trade Secrets Act ("DTSA") and the Louisiana Uniform Trade Secrets Act ("LUTSA"), and its claim against Milek for breach of fiduciary duties.[67]  GGII also addresses the merits of its DTSA and LUTSA claims in its Supplemental Memorandum in Support of its Motion for Temporary Restraining Order.[68]

The DTSA provides that, "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."[69]  The DTSA provides injunctive relief to prevent actual or threatened misappropriation.[70]  The elements of a DTSA claim are: (1) ownership of a trade secret; (2)

---

[65] *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991) (citing *H & W Industries, Inc. v. Formosa Plastics Corp.*, 860 F.2d 172, 179 (5th Cir. 1988)).
[66] *Association of Taxicab Operators, USA v. City of Dallas*, 760 F. Supp. 2d 693, 696 (N.D. Tex. 2010) (citing *Productos Carnic, S.A. v. Cent. Am. Beef and Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980) ("Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief.")).  *See*, *MMR Constructors, Inc.*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919 at *4 ("To establish a likelihood of success on the merits, a plaintiff 'need not show that success is an absolute certainty.  He need only make a showing the probability of her prevailing is better than fifty percent.'" (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)).
[67] R. Doc. 3-1 at pp. 7-11.
[68] R. Doc. 13 at pp. 4-6.
[69] 18 U.S.C. § 1836(b)(1).
[70] 18 U.S.C. § 1836(b)(3)(A)(i).

misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce.[71]  The DTSA defines "trade secret" as including financial and business information that "the owner thereof has taken reasonable measures to keep . . . secret" and "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."[72]

The DTSA further defines "misappropriation" as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) disclosure or use of a trade secret of another without express or implied consent by a person who —
    (i) used improper means to acquire knowledge of the trade secret;
    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was —
        (I) derived from or through a person who had used improper means to acquire the trade secret;
        (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
        (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; . . . .[73]

Thus, "Under the DTSA, prohibited 'misappropriation' includes the acquisition of a trade secret by improper means, as well as its use or disclosure."[74]  The DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement

---

[71] *Torsh Inv. v. Audio Enhancement, Inc.*, 661 F. Supp. 3d 596, 603-04 (E.D. La. 2023) (citing *Complete Logistical Servs. LLC v. Rulh*, 350 F. Supp. 3d 512, 517 (E.D. La. 2018); 18 U.S.C. § 1832, *et seq*.).
[72] 18 U.S.C. § 1839(3).
[73] 18 U.S.C. § 1839 (5)(A)-(B).
[74] *MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919, at *4 (M.D. La. April 26, 2022) (*citing* 18 U.S.C. § 1839(5)(A)-(B)).

of a breach of a duty to maintain secrecy, or espionage through electronic or other means."[75]

Like the DTSA, the LUTSA provides for injunctive relief against "actual or threatened misappropriation" of trade secrets.[76]  The elements of an LUTSA claim mirror those of the DTSA, and include: (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) actual loss caused by the misappropriation.[77]  District courts in this Circuit have recognized that the definitions provided under the LUTSA are almost identical to the definitions under the DTSA.[78]

The Court finds that the allegations in GGII's Verified Complaint, accepted as true, establish that Milek's actions shortly before leaving GGII qualify as "misappropriation" of GGII's trade secrets through "improper means" under the DTSA and LUTSA.[79]  GGII asserts that it maintains certain business information, including financial information and client lists, as confidential and does not share it outside of GGII.[80]  GGII further asserts that it takes measures to preserve the secrecy of this information, which can only be accessed by and through a company email and

---

[75] 18 U.S.C. § 1839(6)(A).  The term "improper means" does not include, however, "reverse engineering, independent derivation, or any other lawful means of acquisition."  18 U.S.C. § 1839(6)(B).

[76] La. R.S. 51:1432(A).

[77] *Computer Management Assistance Co. v. Robert F, DeCastro*, 220 F.3d 396, 403 (5th Cir. 2000) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)) (internal quotation marks omitted).

[78] *Compare* 18 U.S.C. § 1839 *to* La. R.S. 51:1431.  *See, MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919, at *4 (M.D. La. April 26, 2022) (citing *Source Prod. & Equip. Co. v. Schehr*, Civ. A. No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (Vance, J.) (*comparing* 18 U.S.C. §§ 1836 *with* LUTSA § 1); *Sapienza v. Trahan*, Civ. A. No. 16-CV-01701, 2017 WL 6012658, at *6 (W.D. La. Oct. 23, 2017) (Hannah, M.J.), *report and recommendation adopted*, Civ. A. No. 16-1701, 2017 WL 6008076 (W.D. La. Dec. 4, 2017)).

[79] R. Doc. 1 at ¶¶ 24, 52, & 53.

[80] R. Doc. 1 at ¶¶ 51,71; R. Doc. 3-1 at p. 2.

password assigned to each employee or through a company computer with multi-factor authentication.[81]   GGII claims that its confidential information is highly valuable, not generally known outside of GGII, and would be of significant value to GGII's competitors.[82]   GGII asserts that it derives a competitive advantage and independent economic value, both actual and potential, from the confidential information because it is not generally known to the public or to others who can obtain economic value from its disclosure or use.[83]   GGII specifically alleges that the information taken by Milek includes GGII's customer lists and other contacts, financial information, and billing information.[84]

The Court first finds that the misappropriated information qualifies as trade secrets under the DTSA and LUTSA.   GGII specifically alleges that Defendants misappropriated its customer list, and has provided evidence demonstrating that Milek transmitted two documents to herself containing a list of some of GGII's customers and venders, as well as their contact information, including its customer BM.[85]   "Courts in this circuit have held that customer lists can be considered trade secrets."[86]   Additionally, "existing state law on trade secrets informs the Court's application of the DTSA."[87]   The Louisiana Supreme Court has held that a customer

---

[81] R. Doc. 1 at ¶¶ 51,71; R. Doc. 3-1 at p. 2.
[82] R. Doc. 3-1 at p. 2.
[83] R. Doc. 3-1 at p. 2.
[84] R. Doc. 1 at ¶¶ 4, 6, 11, 35.  *See*, R. Doc. 3-1 at p. 9; R. Doc. 13 at pp. 2-4.
[85] R. Doc. 13 at pp. 2-3 (*citing* R. Doc. 13-1 at ¶¶ 5(a)-(b)); R. Doc. 7-4 at pp. 1-2.
[86] *Complete Logistical Services, LLC v. Rulh*, 350 F. Supp. 3d 512, 518 (E.D. La. 2018) (citing *Alfasigma USA, Inc. v. EBM Medical, LLC*, Civ. A. No. 17-7753, 2018 WL 1604961, at *1 (E.D. La. Apr. 3, 2018) (Lemelle, J.)); *MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No.22-00267-BAJ-RLB, 2022 WL 1223919, at *5 (M.D. La. Apr. 26, 2022).
[87] *Complete Logistical Services, LLC*, 350 F. Supp. 3d at 518 (quoting *Source Prod. & Equip. Co. v. Schehr*, Civ. A. No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (Vance, J.)) (internal

list constitutes a trade secret and is subject to protection under the LUTSA when it contains information that has been compiled through the work and diligence of the company's sales force and is not common knowledge for the industry or easily discoverable.[88] Here, GGII developed its client list over time[89] and took reasonable efforts to maintain the secrecy of its customer list by limiting employee access to certain confidential business information, including its customer list, and password protecting that information.[90]

The Court further finds that GGII's efforts to maintain the confidentiality of its customer lists gives it "independent economic value."[91] A direct competitor, like MilekCo would benefit greatly if it had access to GGII's customer list, particularly because MilekCo is a newly-formed business that was formed in February 2024 with Caroline Milek as the named director.[92] It further appears that Defendants have already benefited from having access to GGII's customer list. GGII has provided evidence that Milek has shared GGII's confidential business information with Plato and MilekCo.[93] GGII has also provided evidence showing that Milek, operating on behalf of MilekCo, has communicated via email with a third-party truck broker to

---

[88] *Johnston v. Vincent*, 2021-01196 (La. 2/1/23), 359 So.3d 896, 914-16.
[89] R. Doc. 1 at ¶ 24.
[90] *MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No.22-00267-BAJ-RLB, 2022 WL 1223919, at *5 (*citing* Uniform Trade Secrets Act, § 1(4)(ii) comments (drafters of the Uniform Trade Secrets Act, upon which the LUTSA is based, explain that "reasonable efforts to maintain secrecy" may include advising employees of the existence of a trade secret or limiting access to a trade secret on a "need to know basis")).
[91] 18 U.S.C. § 1839 (3)(B).
[92] R. Doc. 7-1.
[93] R. Doc. 13-1 at ¶¶ 8-9 (*citing* R. Docs. 7-2 & 7-3).

quotation marks omitted). *See also*, *JJ Plank Company, LLC v. Bowman*, Civ. A. No. 18-0798, 2018 WL 3579475, at *3-4 (W.D. La. July 25, 2018) (Doughty, J.).

discuss delivery services for future shipments for a GGII client, BM.[94]  Plato was copied on, and referenced in, these emails.[95]  Thus, there is evidence before the Court that Defendants have already used GGII's customer list.

The Court further finds that Defendants misappropriated GGII's trade secret through "improper means."  GGII alleges that Milek, acting in concert with Plato and knowing that information regarding GGII's business and customers was confidential and not to be disseminated outside of GGII, exceeded her authorized access to company computers in order to access and acquire confidential documents and trade secrets that she then transferred to her personal email address.[96]  GGII further alleges that Defendants acquired its trade secrets through improper means, including by receiving the information through Milek's authority as an ex-officer of GGII, under circumstances which they knew or should have known to be improper.[97]

Finally, GGII alleges that its trade secrets are used to facilitate interstate commerce, as GGII is based in Louisiana but operates in other states and regularly transacts business in other states.[98]

In sum, the Court finds that GGII has carried its burden of establishing a high likelihood of success on the merits of its DTSA and LUTSA claims because Milek, with the help of Plato, misappropriated, by improper means, GGII's customer list, which qualifies as a trade secret, and which is used in interstate commerce.[99]

---

[94] R. Doc. 13-1 at ¶ 9 (*citing* R. Doc. 7-3); R. Doc. 1 at ¶ 41(b); R. Doc. 3-1 at p. 3.

[95] R. Doc. 7-3.

[96] R. Doc. 1 at ¶¶ 4, 6, 7, 11, & 12.

[97] *Id.* at ¶¶ 42 & 53.

[98] *Id.* at ¶ 50

[99] Because the Court has determined that GGII has shown a substantial likelihood of success on the merits with respect to its DTSA and LUTSA claims, the Court need not address whether GGII can

### 2. *Substantial Threat of Irreparable Harm*

In addition to carrying its burden of showing a likelihood of success on the merits of its claims, GGII has shown that it has suffered, or will continue to suffer, irreparable harm or injury if a TRO is not granted. GGII has also shown that the irreparable harm is immediate, thus satisfying the first prong of Fed. Rule Civ. Proc. 65(b).

Irreparable harm is an injury that, "cannot be undone through monetary damages,"[100] or for which monetary damages are "especially difficult" to compute.[101] GGII contends that it will be irreparably harmed by Defendants' misappropriation, and documented dissemination, of its trade secrets.[102] Both the United States Congress and the Louisiana legislature, through the DTSA and the LUTSA (respectively), recognize that irreparable injury arises from the misappropriation of trade secrets.[103] As previously mentioned, under both the DTSA and the LUTSA, even the threat of misappropriation of a trade secret may be enjoined.[104] Thus, to satisfy the irreparable injury element, GGII need only show that the "defendant possesses the trade secrets and is in a position to use them."[105]

---

show a substantial likelihood of success on the merits of its claim against Milek for breach of fiduciary duties of loyalty and due care. R. Doc. 3-1 at pp. 7 & 11.

[100] *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citations omitted).

[101] *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 630 n. 12 (5th Cir. 1985).

[102] R. Doc. 3-1 at pp. 11-12.

[103] *MMR Constructors, Inc. v. JB Group of La., LLC*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919, at *5 (M.D. La. April 26, 2022).

[104] 18 U.S.C. §1836(b)(3)(A)(i); La. R.S. 51:1432(A).

[105] *MMR Constructors, Inc.*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919 at *5 (quoting *Lifesize, Inc. v. Chimene,* Civ. A. No. 1:16-cv-1109-RP, 2017 WL 8751921, at *1 (W.D. Tex, Apr. 27, 2017) (Pitman, J.)) (internal quotation marks omitted).

In its Verified Complaint, GGII alleges both a threatened misappropriation as well as an actual misappropriation of its trade secrets.  GGII has shown that Milek possessed GGII's trade secrets in her position as an officer of GGII, namely, as Vice President of Imports.[106]  GGII has also shown that it took reasonable steps to maintain the secrecy of those trade secrets.[107]  GGII has further shown that Milek, after giving her notice to GGII but before leaving its employ, disseminated those trade secrets to her personal email address, as well as to Plato.[108]  The trade secrets alleged to have been misappropriated in this matter include lists of GGII's clients and vendors along with contact information for same; GGII's custom clearance tracking software with identifiable client information; GGII's password protected master import spreadsheet showing all current customer shipments which GGII refers to as "a foundational document of GGII's operations," and GGII's customer invoicing and pricing information.[109]  GGII has also provided evidence that Milek emailed Plato a link to GGII's password-protected spreadsheet of passwords used in the course of GGII's daily business operations.[110]  Those actions support a finding of threatened misappropriation.

Further, the Fifth Circuit has held that, "It is not the number of trade secrets taken that determines whether the threat of irreparable harm exists.  The fact that a single trade secret may be disclosed is enough."[111]  Here, GGII has alleged, and

---

[106] R. Doc. 1 at ¶¶ 4, 6, 7, 11, 12, 42 & 53; R. Doc. 13-1 at ¶ 3.
[107] R. Doc. 1 at ¶¶ 51,71; R. Doc. 3-1 at p. 2.
[108] R. Docs. 7-2 & 7-4.
[109] R. Doc. 1 at ¶¶ 24 & 40; R. Doc. 3-1 at pp. 1-2 & 3-4; R. Doc. 13-1 at ¶ 5 (*citing* R. Docs. 7-4).
[110] R. Doc. 13-1 at ¶ 8 (*citing* R. Doc. 7-2).
[111] *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191-92 (5th Cir. 1984) (quoting *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982)) (internal quotation marks omitted).

produced evidence to show, that Milek has also used GGII's protected and confidential information in apparent furtherance of her newly-formed business, MilekCo., and has advised third-parties that Plato is a partner in that new business.[112]  That evidence supports a finding that Defendants were using GGII's confidential information.[113]  The Court further finds that Defendants' possession of GGII's confidential information allows Milek and Plato, individually and through MilekCo, to use that information to unfairly compete with GGII, resulting in injuries that are either unable to be compensated monetarily or that will prove especially difficult to compute.  Additionally, Defendants' actions in allegedly poaching a GGII client, causing confusion amongst GGII's clients, and causing the loss of good will by GGII's clients are all especially difficult to quantify.  As such, the Court finds that GGII has sustained its burden of establishing that it faces a substantial threat of immediate and irreparable harm if a TRO is not granted.

### 3.  *The Threatened Injury if the Injunction is Denied Outweighs the Threatened Harm to Defendants*

In light of the evidence provided by GGII in its Verified Complaint and exhibits thereto, the Motion for Temporary Restraining Order, and the Supplemental Memorandum in support of the Motion, the Court finds that greater injury will be inflicted upon GGII by the denial of temporary injunctive relief than may be inflicted upon the Defendants by the granting of the temporary injunction.  The harm to the Defendants (a restraint for a short duration) appears slight, while the damage to

---

[112] *See,* R. Docs. 7-1 & 7-3.
[113] R. Doc. 1 at ¶ 6; R. Doc. 7-1; R. Doc. 7-3; R. Doc. 13-1 at ¶¶ 8-9.

GGII (loss of clients and confidential information to a former high-level employee and now competitor) appears substantial. Indeed, if the Defendants are not using GGII's trade secrets and confidential information, they will likely suffer no harm by the issuance of the temporary restraining order restraining them from using the confidential information. Defendants are not prohibited from engaging in legitimate business, even if a competing business, that does not utilize GGII's misappropriated trade secrets and confidential information. Moreover, as detailed below, the Court has tailored its order narrowly to preserve the status quo and to minimize any harmful effects on the Defendants until Defendants can be notified and present any arguments or evidence at a hearing.[114] The Court therefore finds that the harm to Defendants in issuing a temporary restraining order does not outweigh the likely irreparable injury facing GGII absent the restraining order.

### 4. *Public Interest Factor*

The Court finds that the public has an interest in assuring that competition, whether between two unrelated competitors or between a competitor and former employee-turned-competitor, is "untainted by unfair advantage."[115] As detailed above, GGII, as an employer, has an interest in protecting its trade secrets and confidential information from misappropriation by current or former employees. An employee, absent some further restriction, has the right to start or join a competing company. Employees, however, are not permitted to gain a tactical or competitive

---

[114] *See, generally,* § 2951 Temporary Restraining Orders—In General, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.).
[115] *Union Carbide Corp. v. UGI Corp.,* 731 F.2d 1186, 1192 (5th Cir. 1984).

advantage by misappropriating and using trade secrets that they have been forbidden to divulge.[116]  The Court therefore finds that enjoining Defendants from using GGII's trade secrets and confidential information will not disserve the public interest, and will instead promote fair competition, ethical behavior, honest work, and innovation.[117]

In sum, the Court finds that GGII has unequivocally satisfied the procedural and substantive requirements for the issuance of an *ex parte* temporary restraining order and the need for the issuance of a TRO.[118]  Specifically, the Court finds that: (1) GGII is substantially likely to prevail on the merits of its DTSA and LUTSA claims; (2) GGII faces a substantial and immediate threat of irreparable harm if the requested temporary restraining order is not granted; (3) the irreparable harm that GGII will suffer if the requested temporary restraining order is denied outweighs any harm, if any, to Caroline Milek, Mark Cameron Plato, or MilekCo International Co., Inc., if the temporary restraining order is granted; and (4) granting the requested temporary restraining order will not disserve the public interest.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Gilscot-Guidroz International Co., Inc.'s Motion for Temporary Restraining Order[119] is **GRANTED**, and that a temporary restraining order be and is hereby **ENTERED,**

---

[116] *FMC Corp. v. Varco Int'l Inc.*, 677 F.2d 500, 505 (5th Cir. 1982).
[117] *MMR Constructors, Inc. v. JB Group of LA, LLC*, Civ. A. No. 22-00267-BAJ-RLB, 2022 WL 1223919, at *6 (M.D. La. April 26, 2022) (citation omitted).
[118] *Valley v. Rapides Parish School Bd.,* 118 F.3d 1047, 1050 (5th Cir. 1997).
[119] R. Doc. 3.

**ORDERING, ADJUDGING, AND DECREEING** that defendants, Caroline Milek, Mark Cameron Plato, and MilekCo International Co., Inc., and any of their agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, the "Covered Persons"):

1. are restrained and enjoined from, directly or indirectly, disclosing or making any use of any trade secrets, confidential information, knowledge, data or other information of Gilscot-Guidroz International Co., Inc., including without limitation, business policies, pricing, marketing, distribution, finances, and sales information and business plans, software and marketing tools, customer lists, lists of suppliers, management and administrative systems, and intellectual property rights (collectively, "Confidential Information");

2. must return to Gilscot-Guidroz International Co., Inc. or its counsel, within 48 hours, any of the Confidential Information that is in their possession, custody, or control, including without limitation any electronically stored information or hard copy material by providing same to Gilscot-Guidroz International Co., Inc. headquarters or to counsel for Gilscot-Guidroz International Co., Inc.;

3. must return to Gilscot-Guidroz International Co., Inc. or its counsel, within 48 hours, any property of Gilscot-Guidroz International Co., Inc. that is in their possession, custody, or control, without deleting, over-writing, destroying, discarding, or otherwise altering any records, data, documents,

evidence, communications (e.g., email, voicemail, text, or instant messages), or other information electronically stored on the computer;

4. must preserve all evidence that may be relevant to Gilscot-Guidroz International Co., Inc.'s claims and not delete, over-write, destroy, discard, or otherwise alter any records, data, property, documents, evidence, communications (*i.e.,* email, voicemail, text, or instant messages), or other information, including without limitation any electronically stored information or hard copy material, that may be subject to discovery; and

5. must, after the preservation of evidence by the copying/mirroring of electronic information on the personal computing devices (including any desktop computers, laptop computers, tablets, or smart phones) of Covered Persons, return to Gilscot-Guidroz International Co., Inc. or its counsel any Confidential Information that is in their possession, custody, or control, and to the extent that any such information is maintained in electronic form must, after such information is copied and returned to Gilscot-Guidroz International Co., Inc., purge or destroy any electronic record of such information, in a manner that does not allow the Confidential Information to be retrieved or restored, and certify to Gilscot-Guidroz International Co., Inc., under oath, that the Confidential Information has been thus purged or destroyed.

**IT IS FURTHER ORDERED** that the issuance of this temporary restraining order be and is hereby conditioned upon Gilscot-Guidroz International Co., Inc.

promptly furnishing **ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS** in security, and that, through its counsel, be and is hereby authorized to deposit into the Registry of the Court, associated with the above captioned matter, the sum of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS, pending further orders of this Court.

**IT IS FURTHER ORDERED** that this temporary restraining order, unless extended for good cause and/or by the agreement by the parties, shall **EXPIRE** by its terms **fourteen days** from the date and hour of its issuance.

**IT IS FURTHER ORDERED** that Gilscot-Guidroz International Co., Inc.'s counsel shall: (1) immediately provide notice of this Order to Defendants and/or Defendants' counsel, if counsel if known, by email and regular mail to the Defendants' last known address; and (2) therewith, shall provide Defendants and/or Defendants' counsel copies of this Order; and (3) not later than **12:00 p.m. on Friday, June 7, 2024** shall file a certification into the record setting forth what efforts have been made to provide notice and copies of this Order to Defendants and/or Defendants' counsel.

**IT IS FURTHER ORDERED** that a telephone status conference is scheduled for Monday, **June 10, 2024** at **10:00 a.m. (CST)** to discuss the selection of a date for the Preliminary Injunction Hearing. Dial-in instructions will be provided to counsel by email prior to the status conference. Gilscot-Guidroz International Co., Inc.'s **counsel shall provide notice of the telephone conference and the dial-in information to Defendants and/or Defendants' counsel.**

New Orleans, Louisiana, June 3, 2024 at _____8:00_____p.m.


**WENDY B. VITTER**
**United States District Judge**